# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

RONNIE MOORE,                )
                                   )
         Plaintiff,           )
                                     )
vs.                                )     No. 2:13-CV-192
                                     )
BRISTOL METALS, LLC,      )
                                     )
         Defendant.       )
                                     )
                                     )
                                     )

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court for consideration of "Defendant's Motion for Summary Judgment" [doc. 8]. Plaintiff has filed a response [docs. 13, 14, 15], and Defendant has filed a reply [doc. 16]. Oral argument is unnecessary, and the motion is ripe for the Court's determination.

Plaintiff has filed suit for alleged violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. For the reasons that follow, the Defendant's Motion will be DENIED in part and GRANTED in part.

## I.

### *Background*

The Defendant (hereafter "Defendant" or "Bristol Metals") is a manufacturing plant located in Bristol, Tennessee. Plaintiff (hereafter "Plaintiff" or "Mr. Moore") was employed by Bristol Metals from 2003 until his termination on July 26, 2011, most recently as a crane operator on the plant floor. The primary dispute in this lawsuit centers around several days of

missed work in 2010 and 2011. Mr. Moore contends that he was legally entitled to these absences under the FMLA and that he was wrongfully terminated because of them. Bristol Metals views them as excessive absences warranting termination under company policy.

Bristol Metals has a detailed "Absenteeism Policy" (hereafter "the Policy") for its employees. The Policy is based on a "points system," whereby employees accumulate points for each violation of the Policy. Violations include late arrivals and early departures (one-half point for each violation), absences without an accepted medical excuse (one point for each violation), and absences without notifying management (two points for each violation). As points are accumulated, the employee becomes subject to ascending disciplinary action: two points warrants a verbal warning, three points warrants a written warning, four points warrants a three-day suspension, and exceeding four points warrants termination. As to absences for minor illnesses, Bristol Metals's management has case-by-case discretion as to whether to accept an employee's medical excuses and may make its decision in the context of the employee's past attendance record. There is no dispute that Mr. Moore was familiar with the company's Absenteeism Policy, and Bristol Metals maintains that it does not assess points for absences covered under the FMLA.

The relevant facts, including Mr. Moore's attendance record, as reflected in the documents and deposition excerpts submitted by the parties, are as follows:

<u>2010 Absences</u>

In February 2010, Mr. Moore received a verbal warning for accumulating 2.5 points under the Absenteeism Policy. He attributes the corresponding absences to car trouble and other circumstances, and has not claimed that they should be treated as FMLA-covered leave.

Mr. Moore was absent from work two days in March and April 2010. In separate actions, he was suspended for accruing 4.5 points and informed via a written warning that his next violation could result in termination. Mr. Moore testified that he told his supervisors that the absences were due to his wife's depression and his need to assist her. Mr. Moore also violated the attendance policy because he had difficulty in switching from first to second shift.

On May 3, 2011, Mr. Moore applied for FMLA leave. Bristol Metals requested medical certification and provided relevant forms for Mr. Moore to complete. In part, the form completed by Mrs. Moore's physician states:

> Describe other relevant medical facts, if any, related to the condition for which the patient needs care (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):
>
> *"patient's wife has neck and lower back pain and muscle spasms from spinal disc disease. Mr. Moore may need to be home with his wife when her cervical disc disease or lumbar disc disease flares causing her pain and worsening depression. [S]he may need help getting out of bed and around the house, preparing meals, and getting ready for and going to medical appointments"*
>
> ***
>
> Explain the care needed by the patient and why such care is medically necessary:
>
> *Mrs. Moore needs help with feeding herself and getting around when disc disease and depression flare. [illegible]*
>
> ***
>
> Explain the care needed by the patient, and why such care if [sic] medically necessary:
>
> *When her depression or disc disease flares her symptoms make it impossible for her to care for herself and needs treatment to be able to regain care for herself.*

Mr. Moore also completed portions of another form, stating:

> *I help my wife get out of bed, and get around the house, and get ready for and go to medical app. when her disease flares. She also needs help to cook and feed*

3

*when her disease flares and is very intense[.]*

Mr. Moore's FMLA request was approved on May 27, 2011. Bristol Metals did not request additional information or attempt to clarify any portion of the completed forms.

Bristol Metals assessed several points to Mr. Moore in May of 2011 after he was absent on May 12, 23, 24, and 25. He attributes the absences to a need to assist his wife with episodes of anxiety. Mr. Moore testified that when his wife suffered from anxiety, she would become "hysterical," making it necessary for him to calm her down and ensure that she took her prescription medication. Each of the May episodes was triggered by events occurring within the family and were unrelated to Mrs. Moore's disc disease. Mr. Moore claims that Bristol Metals's supervisors were aware of his wife's anxiety and had allowed him to miss work because of her anxiety in the past.

His absentee record was discussed at a meeting with Bristol Metals management on June 1, 2011. Mr. Moore testified that he told his supervisors that it was necessary for him to care for his wife when she became "severely depressed or hysterical[.]" At the same meeting, Mr. Moore was suspended for three working days for having accumulated four absentee points. Only the absence on May 24, 2011 was counted as FMLA leave. Mr. Moore filed a grievance as to the denial of leave his absences on May 12, 23, and 25, but did not take additional steps to appeal his discipline after the grievance was denied.

According to his affidavit, Mr. Moore believed that his FMLA certification allowed him to miss work for all of his wife's anxiety episodes. He did not understand that the coverage was determined by the "triggering cause" for each attack. However, he was aware after the June 1

4

meeting that Bristol Metals was not treating all of his May absences as covered under the FMLA and chose not to pursue the matter.

Bristol Metals counted absences on June 14, June 22, and July 17, 2011 as FMLA leave. On July 18, Mr. Moore left work after receiving a phone call from a hysterical Mrs. Moore. Because the supervisor was not present, Mr. Moore attempted to phone him, but did not leave a message. He instead alerted a fellow employee, who he mistakenly believed was the "lead man" for that shift. Mr. Moore testified that he was unable to formally clock out because the fingerprint scanner was not working. He understood that leaving work without permission and failing to clock in and out were violations of company policy.

On July 19, 2011, Mr. Moore called in sick after an allergic reaction caused a rash on his arms and chest. The following day, July 20, Mr. Moore again missed work because of the rash. He testified that he had Mrs. Moore call his supervisor, but there is a dispute as to whether that call was actually received. Mr. Moore obtained a physician's note verifying the allergic reaction.

When he returned to work on July 21, 2011, Mr. Moore was called into a disciplinary meeting and was suspended for leaving work unauthorized on July 18. Company policy provides that an unauthorized absence during the shift is grounds for termination at the first offense. Mr. Moore's employment was officially terminated on or around July 26, 2011. In a termination letter, Plant Superintendent Carl Devine summarized Mr. Moore's 2010 and 2011 disciplinary record. Regarding the June and July 2011 absences, Mr. Devine stated that Mr. Moore had accumulated four points as of June 2011. Mr. Devine reasserted that Mr. Moore had violated company policy by not notifying his direct supervisor that he was leaving the premises on July 18 and noted that it Mr. Moore's failure to clock out on July 18 was a violation of company policy. Further, Mr. Devine stated that the Plaintiff had accumulated a total of 6.5 absentee

5

points, including those assessed for the events of July 18-20. Mr. Moore claims that he did not receive the letter.

Bristol Metals treated Mr. Moore's absence on July 18 as FMLA protected and did not assess any absentee points against him for leaving the premises (though he was punished by termination under other policies). Bristol Metals did not accept the note from Mr. Moore's physician; he received one point for being absent unexcused on July 19 and two points for being absent without calling on July 20, 2011.

Mr. Moore filed this lawsuit on July 23, 2013, claiming that Bristol Metals took adverse action against him in violation of the FMLA. Bristol Metals argues that Mr. Moore's termination was unrelated to his FMLA absences and was justified under company policies.

## II.

### *Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56. Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(e)(1)(A). Rule 56(c)(1)(B) allows a party to "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

### III.

*Analysis*

**Plaintiff's Objection to Exhibits**

Plaintiff objects to three of Defendant's exhibits that are submitted in support of summary judgment on the grounds of hearsay. Plaintiff argues that he had not seen them before he was questioned about them in his deposition. While Defendant does not specifically respond to Plaintiff's challenge in its reply, it does reference that the company documents provided fall under the business records exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6). The documents at issue are an unsigned termination letter, which plaintiff says he never

received; handwritten notes related to the June 1, 2011 attendance meeting; and an attendance printout.

"Rule 56(c) permits a party to 'object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.' Fed. R. Civ. P. 56(c)(2). The objection contemplated under Rule 56 as amended is not that the material has not been submitted in admissible form, but that it cannot be." *Martin v. Performance Boat Brokerage.com, LLC*, 973 F. Supp. 2d 820, 824 (W.D. Tenn. 2013) (internal quotation marks and citation omitted).[1] Plaintiff does not make this argument, and Defendant has pointed out that its supporting documents are an exception to the hearsay rule because they are business documents. *Cf. Brown v. Siemens Healthcare Diagnostics, Inc*., No. DKC 11-0769, 2012 WL 3136457, at *5 (D. Md. July 31, 2012) (hearsay objection at summary judgment failed as plaintiff did not make argument under Rule 56(c)(2) that the material cannot be submitted in admissible form). Because there is no showing that the documents cannot be submitted in an admissible form, the court will consider the three documents.

### Affidavits of Plaintiff and his Wife

Defendant argues in its reply brief that Plaintiff relies on his and his wife's affidavits rather than the record and that the affidavits contain conclusory statements and statements that contradict plaintiff's deposition testimony, which cannot create a question of fact. The Sixth Circuit has held that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Reid v. Sears, Roebuck & Co*., 790 F.2d 453, 460 (6th Cir. 1986). "*Reid* and its progeny have thus barred the nonmoving party from avoiding summary judgment by simply filing an affidavit

---

[1] Rule 56 was amended effective December 1, 2010.

that directly contradicts that party's previous testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006).

The court has considered the affidavits in light of defendant's objection. To the extent a portion of the plaintiff's affidavit contradicts his earlier deposition testimony, the court will not consider that portion of the affidavit. Further, to the extent that a portion of Tammy Moore's affidavit is not supported by the record, the court will not consider that portion.

However, the Defendant appears to have made a mistake in cross-referencing the Plaintiff's affidavit and deposition testimony. In its reply brief, the Defendant compares portions of the Plaintiff's deposition in which he recalled a conversation with his supervisors during a disciplinary meeting, with Paragraph 13 of the Plaintiff's affidavit, also regarding a disciplinary meeting. Bristol Metals points out that Mr. Moore's affidavit claims he told his supervisors that he needed to care for his wife when she became "severely depressed or hysterical," while he testified in his deposition that "[t]here really wasn't a discussion." On closer review, the statements reference two separate meetings; the statements in Mr. Moore's affidavit were made in regard to the disciplinary meeting on June 1, 2011 and the quoted portions of the deposition were in reference to a later meeting on July 21, 2011. Mr. Moore testified that he told his supervisors about his wife's condition in the June 1 meeting, which corroborates his affidavit.

### Statute of Limitations Defense

Bristol Metals asserts that FMLA claims based on Mr. Moore's absences in 2010 are barred by the statute of limitations. However, Bristol Metals does not assert the defense as grounds for dismissal of any part of the Plaintiff's claims and neither side has briefed the issue substantively in their otherwise exhaustive memoranda. It is further unclear what instances

Bristol Metals believes may be barred by the statutory limitation period. Without specific facts or evidence, the Court declines to rule on the issue in this opinion.

## FMLA Claims

Under the FMLA, employees are allowed up to "12 work weeks of leave during any 12-month period" for reasons including "to care for [a] spouse . . . if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "The FMLA makes it unlawful for any employer 'to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act],' 29 U.S.C. § 2615(a)(1), or to 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]'" *Id*. at § 2615(a)(2)." *Seeger v. Cincinnati Bell Tele. Co., LLC*, 681 F.3d 274, 281 (6th Cir. 2012). The Sixth Circuit recognizes two separate theories of recovery under the FMLA: "(1) the 'entitlement' or 'interference' theory arising under 29 U.S.C. § 2615(a)(1), and (2) the 'retaliation' or 'discrimination' theory arising under 29 U.S.C. § 2615(a)(2)." *Tillman v. Ohio Bell Tele. Co.*, 545 F. App'x 340, 348 (6th Cir. 2013) (citing *Seeger*, 681 F.3d at 282). Although interference and retaliation are closely related, the requisite proof differs. *Seeger*, 681 F.3d at 282. Because the interference theory is derived from an employee's substantive rights, the employee may recover for a violation, regardless of his employer's intent. *Id.* In contrast, discriminatory motive is the "central issue" addressed by the retaliation theory. *Id.* Plaintiff has brought claims under both theories.

## The *McDonnell Douglas* Burden-Shifting Approach

The *McDonnell Douglas* burden-shifting analysis applies t o employment

10

discrimination claims. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Therefore, if the plaintiff demonstrates a prima facie case of interference under the FMLA, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). Once the defendant meets this burden, the plaintiff must show that the proffered reason is a pretext for unlawful discrimination. *Id.* A plaintiff may demonstrate pretext by showing that the employer's proffered reason "(1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action." *Seeger*, 681 F.3d at 285 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).


## Interference Claim

"The 'entitlement' or 'interference' theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred, regardless of the intent of the employer." *Seeger*, 681 F.3d at 282 (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). However, employees requesting FMLA do not have greater protection against termination for unrelated reasons; thus, "employees may be dismissed so long as the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006) (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002)).

Adverse employment actions against an employee can form the basis of an interference claim. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). "[I]f an employer takes an employment action, in whole or in part, on the fact that the employee took FMLA-protected

leave, the employer has denied the employee a benefit to which he is entitled." *Id.* (citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007)). "An employer is thus liable for interference if it uses FMLA leave as one factor in deciding to terminate an employee." *Hajizadeh v. Vanderbilt Univ.*, 879 F. Supp.2d 910, 921 (M.D. Tenn. 2012) (citing *Wysong,* 503 F.3d at 448).

> To establish a prima facie FMLA interference claim, a plaintiff must show that
>
> (1) he is an eligible employee; (2) the defendant is an employer as defined in the Act; (3) he was entitled to leave under the FMLA; (4) he gave defendant notice of his intention to take leave; and (5) the defendant denied him FMLA benefits to which he was entitled.

*Donald,* 667 F.3d at 761 (citations omitted).

The Defendant has made numerous challenges to whether Mr. Moore was entitled to FMLA leave on the claimed dates and whether he notified Bristol Metals of his intent. Defendant argues that, because Plaintiff's FMLA certification forms appear to link Mrs. Moore's depression to her degenerative disc disease, only depression caused by her physical ailments was covered by the FMLA. Plaintiff argues that all of Mrs. Moore's mental illness was covered by the FMLA and, if there was confusion as to the scope of the request, Bristol Metals was obligated to inquire further. Resolution of these issues is fact-intensive, concerns multiple regulations, and would require exhaustive inquiries into the circumstances surrounding each of Mr. Moore's absences, the details of communications among the parties at various times throughout 2010 and 2011, and the Defendant's understanding of the Plaintiff's FMLA certification forms. Among others, there are issues of fact as to whether Mr. Moore's absences during May 2011 were because of his wife's mental illness or merely to mediate family disputes, whether the scope of his request was understood to cover any episode related to Mrs. Moore's mental illness or only those caused by certain "triggers," whether the Defendant had actual knowledge of the extent of Mrs. Moore's

mental instabilities so that it should have sought clarification of Mr. Moore's request, and whether Mr. Moore's communications were sufficient to alert the Defendant that he was missing work due to his wife's illness[2].

Simply stated, the root of this controversy is that the parties dispute whether some of Mr. Moore's absences should have been considered leave under the FMLA. The evidence submitted, particularly Mr. Moore's deposition transcript and affidavit, combined with the lack of testimony from any of Defendant's employees, creates a myriad of factual issues that cannot be resolved at this stage. Whether Mr. Moore was in fact entitled to protection on the subject dates and, if so, on whose shoulders any misunderstanding as to notice must fall, is ultimately a question for the jury. Assuming for today that the Plaintiff can establish each of the elements of his claim, such effort satisfies only the first step of the *McDonnell Douglas* framework and thus shifts the burden onto the Defendant to proffer a legitimate, non-discriminatory reason for its adverse action. The Defendant has not met this burden with regard to the Plaintiff's interference claim.

Bristol Metals asserts that it would have terminated Mr. Moore's employment for his violations of company rules even if he had not applied for FMLA protection. To that end, Defendant argues that it had several legitimate, non-discriminatory reasons for terminating Mr. Moore. Specifically, Defendant asserts that the Plaintiff violated company policy in (1) leaving the plant early without authorization on July 18, 2011; (2) failing to log his hours using the "bio-metrics" fingerprint system on July 18; and (3) accruing more than four points under the Absenteeism Policy.

---

[2] To illustrate one of multiple factual issues, Mr. Moore claims that Bristol Metals was aware of his wife's condition and that he understood his FMLA request to cover her mental illness. Although the FMLA certification forms are ambiguous, 29 C.F.R. § 825.305(c) provides that an employer who finds an employee's certification to be incomplete must inform the employee and provide an opportunity to cure. It is undisputed that the Defendant did not inform Mr. Moore that his FMLA request was deficient. There is, however, a question of fact as to the extent of Bristol Metals's knowledge and whether it would invoke the inquiry requirements. See e.g., *Gardner v. Detroit Entertainment, LLC*, No. 12-14870, 2014 WL 5286734 (E.D. Mich. Oct. 15, 2014) (denying summary judgment where there was disagreement as to whether Plaintiff's FMLA request was valid to cover certain absences).

<u>Leaving Company Premises Unauthorized on July 18</u>

The Defendant's first proffered reason for terminating Mr. Moore's employment is that he left the plant without consulting the proper authority on July 18, 2011, a violation of company policy warranting termination on the first offense.

Mr. Moore left during his shift after receiving a call from a "hysterical" Mrs. Moore. He claims that the supervisor, Jeff Smith, was not present and did not answer his mobile phone. In accordance with the company's regular practice, Mr. Moore notified Gene Reynolds, the acting "lead man," who assented to his leaving. Mr. Reynolds relayed Mr. Moore's situation to Mr. Smith. Mr. Moore later learned that he was mistaken and Mr. Reynolds had not been the lead man. Bristol Metals did not assess Absenteeism Points against Mr. Moore for missing part of the shift on July 18, but does claims that it terminated him for failing to notify the correct personnel.

As the Defendant notes, the FMLA does not excuse employees from complying with an employer's reasonable notice requirements. However, federal regulations partially excuse this requirement where leave is unforeseeable and there are <u>unusual circumstances</u> such as an emergency. 29 C.F.R. § 825.303(c). Mr. Moore testified that his wife's condition was emergent and that there was no supervisor present. He also testified that notifying the lead man was traditionally acceptable, that Mr. Reynolds was performing the functions of a lead man on July 18, 2011, and that Mr. Reynolds gave him permission to leave the premises. The Defendant has not offered any evidence to contradict Mr. Moore's testimony and treated the partial absence on July 18 as FMLA-related. If Mr. Moore's conduct is found reasonable under the circumstances, then subjecting him to punishment was a violation of federal law.

Provided that the Plaintiff can prove that he was entitled to leave on July 18, there remains a question of fact as to whether his efforts to follow the company's notice policy were

sufficient to comply with the notice requirement. A jury could conclude that Mr. Moore acted reasonably under exigent circumstances and was thus protected from adverse action. There remains, therefore, an issue of fact as to whether Bristol Metals was entitled to terminate Mr. Moore for leaving the plant without notifying the correct personnel on July 18. Bristol Metals has failed to satisfy its burden in showing that Mr. Moore's unauthorized departure was a legitimate, non-discriminatory reason for his termination.

<u>Failure to Clock in on July 18</u>

Bristol Metals's second claimed reason for terminating Mr. Moore's employment was that he violated company policy when he failed to clock in or out on July 18, 2011. Bristol Metals cites disciplinary policy naming this as a terminable offense. Mr. Moore does not dispute that he failed to clock out using the fingerprint scanner at the plant. However, he testified that there had been problems with the system and it would not read his fingerprint. He also stated in an affidavit that this was a common problem at the plant. Bristol Metals has not disputed either assertion. Conspicuously, neither party submitted any evidence regarding whether a secondary option was available to Mr. Moore, nor is it clear whether Bristol Metals was aware of the system's failure on the date in question. Mr. Moore did not testify whether he made any attempt to otherwise record his time, but he could not be expected to do so if no means were provided to him, particularly given that he left in an emergency. While it is conceivable that this could be a legitimate reason for Mr. Moore's termination, Bristol Metals has not submitted necessary evidence to establish it as a legitimate reason for his termination under these circumstances.

<u>The Point Accrual</u>

The primary substantive argument from both parties focuses on the points that Mr. Moore accumulated under the Absenteeism Policy. Mr. Moore claims that Bristol Metals wrongfully assessed points against him for absences in 2010 and 2011. Had it not done so, he would not have accrued enough points to justify his termination. Bristol Metals asserts that Mr. Moore had chronic attendance problems well before submitting his FMLA request. There is no dispute that Mr. Moore accrued points under the Absenteeism Policy in 2010 for issues such as car trouble, not being available by phone and difficulty in adjusting to second shift. Mr. Moore admitted that he was subjected to discipline for those actions. Mr. Moore also acknowledges that the Defendant had made previous efforts to accommodate his absences and had allowed him to change shifts. As to any other points accrued during 2010, no specific dates or incidents have been identified and neither side has submitted evidence from which any conclusion can be drawn.

The Defendant asserts that Mr. Moore had accumulated 6.5 points as of his termination date. Regrettably, the Defendant does not provide a full accounting of the corresponding offenses for each point, making it impossible to determine how many points were assessed for what violations[3] and whether the points were assessed consistently. Records related to Mr. Moore's June 1, 2011 disciplinary meeting show that Mr. Moore had accumulated either 1.5 or 2 points prior to his request for FMLA leave. An additional 2 or 2.5 points[4] were assessed for absences on May 12, May 23, and May 25. Bristol Metals claims that it believed the absences were related to

---

[3] It is unclear how, exactly, Bristol Metals arrived at its final figure. However, it does not appear that the Defendant applied its policies to the letter. For example, Mr. Moore was assessed 2.5 points for his absences on July 19-20, 2011, although the Absenteeism Policy would have made him eligible to receive 3 points total (1 point for calling in without an accepted excuse on July 19, and 2 points for an unexcused absence without calling in on July 20).

[4] The Defendant presented a handwritten note accounting for several points that had accrued prior to June 1, 2011. However, the note does not state whether or how many points Mr. Moore was awarded for his absence on May 12, 2011, only that he had 2.5 points on that date. It is likewise unclear how many of the 2.5 points pre-dated May 12, 2011 and how they were accrued. Viewing the facts in the light most favorable to the Plaintiff, we must assume that the Plaintiff was assessed one point each for his absences on May 12 and May 25, in accordance with the Policy. The note presented is clear that he received only one-half point for leaving early on May 23.

Mrs. Moore's becoming upset on learning that Mr. Moore may have fathered a child with another woman (05/12/11) and arguments that she had with her daughter (05/23/11 and 05/25/11). They were not counted as FMLA-related. Although Mr. Moore argues that at least some of these absences should have been excused, Plaintiff states in his brief that he did not discuss Mrs. Moore's anxiety "triggers" with his supervisors and the Defendant maintains that it did not believe that all of Mrs. Moore's mental episodes were covered by the FMLA request. However, Bristol Metals did count an absence on May 24, 2011 as an FMLA entitlement, when Mr. Moore reported that his wife was still upset from the previous day and that he was "afraid to leave [his wife] home [because] she was depressed." There is no explanation as to why the Defendant considered this absence to invoke Mr. Moore's FMLA entitlement but did not consider the absence on May 23, when the triggering event occurred, to be similarly covered. It is also unclear whether absences on June 14, June 22, and July 17, 2011, which Bristol Metals counted as FMLA leave, were related to Mrs. Moore's disc disease or her standalone mental illness.

At the disciplinary meeting on June 1, 2011, Mr. Moore was suspended for accruing four points and warned that he could be terminated if he violated the Absenteeism Policy again. Mr. Moore testified that he discussed his wife's depression during the meeting and that his supervisors were aware of his need to attend to her when she became "hysterical." However, he noted in his affidavit that the discussion was not related to specific absences or episodes. As Bristol Metals has not submitted affidavits or testimony from its employees, the actual scope of the Defendant's knowledge is unclear and presents a question of fact.

Though Plaintiff now claims that the points were wrongly assessed, he did not exhaust the available steps to protest the points. He testified in his deposition that he asked his union

17

president why his FMLA protection did not extend to all of the May dates and did not receive an answer. He filed a grievance, but admitted that this was only the first step—he did not request a meeting or arbitration following the denial, despite those options being available to him.

Mr. Moore received an additional 2.5 points for absences on July 19-20, 2011, when he had a rash on his arms and chest. The Defendant refused to accept the offered doctor's excuse under its discretionary policy. It is undisputed that the July 19 and 20 absences were not FMLA-related and the Plaintiff acknowledged in his deposition that he was subject to accruing points for those absences.[5] Other than conclusory testimony given in Mr. Moore's affidavit, the Plaintiff has not offered any evidence to dispute the points that existed on his record prior to May 2011 and had not requested any leave at that time.

There is a question of fact as to whether FMLA protected leave was a factor in the Defendant's decision to terminate the Plaintiff. Viewing the facts in the light most favorable to the Plaintiff, he received a total of 2.5 points for absences on May 12, 2011 and May 23-25, 2011. If he was entitled to leave on these dates, then it appears that his points total on June 1, 2011 would have been four—not enough to warrant his termination under the Absenteeism Policy. Therefore, if the Plaintiff can show that he was entitled to FMLA leave on May 12, 23, and 24 and that he made his intent known to the Defendant, then the Defendant, whether it intended to do so or not, denied Mr. Moore's FMLA entitlement by taking adverse action against him for those absences. See *Yontz v. Dole Fresh Vegetables, Inc.*, No.. 3:13-cv-066 2014 WL 5109741 at *9 (S.D. Ohio Oct. 10, 2014) (finding that assessing attendance points for FMLA-protected absences is a violation of federal law, even where employer believes that the FMLA

---

[5] The parties dispute whether Mr. Moore notified management that he would be absent on July 20, 2011. He testified that he asked his wife to call his supervisor. Bristol Metals maintains that it did not receive any call from Mrs. Moore. It is further unclear whether Mr. Moore was assessed any points for the alleged failure to call in, though the Absenteeism Policy warrants two points for such an offense. Nonetheless, Mr. Moore acknowledges that he could have been subject to points under the Policy whether or not his wife called in.

did not apply to the subject absences). Because the legality of the Defendant's actions turns on questions of fact, it cannot prove on summary judgment that the Absenteeism Policy provided it a non-discriminatory reason for terminating Mr. Moore.

Based on the preceding reasons, the Defendant's motion for summary judgment is DENIED as to the Plaintiff's interference claims.

## RETALIATION

In order to establish a retaliation claim under the FMLA, a plaintiff must demonstrate by a preponderance of the evidence that

> (1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Tillman*, 545 F. App'x at 348 (citing *Seeger*, 681 F.3d at 283; *Donald*, 667 F.3d at 761). "The central issue raised by the retaliation theory . . . is 'whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason.'" *Seeger*, 681 F.3d at 282 (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). Thus, unlike interference claims, the employer's motive is relevant "because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Id.* (quoting *Edgar*, 443 F.3d at 508).

The factual disputes over Mr. Moore's FMLA entitlements are discussed in the preceding section. Assuming that Plaintiff can establish the first three factors of his retaliation claim, the Defendant has challenged that there was a causal connection between Mr. Moore's FMLA request and his termination and claimed that it acted in good faith belief that it was justified in terminating Mr. Moore's employment.

19

Of Plaintiff's assertions regarding Bristol Metals's discriminatory motive, the court does not consider accusations that the Defendant orchestrated a master scheme to ignore his rights so that they could suspend and then terminate him because no facts are offered in support of such a scheme. To the contrary, Plaintiff's own pleadings and testimony, together with the documents submitted relative to this motion establish a history of absenteeism and of Bristol Metals's voluntary attempts to "work with" the Plaintiff regarding his absences. [Doc. 1 at Para. 4]. By Plaintiff's own admission, Bristol Metals allowed him to periodically take time off to care for his wife. There is evidence that Bristol Metals attempted to accommodate Mr. Moore by allowing him to change shifts when he accumulated an excess of four points in 2010. Furthermore, the company excused several absences in June and July of 2011 when the Plaintiff began verbally referencing the FMLA in notifying his supervisors.

However, the court does note the Plaintiff's assertions that the Defendant "changed" its reasoning for his termination. According to Mr. Moore's deposition testimony, on July 26, 2011, the Defendant told him that he was being terminated for leaving work without authorization on July 18. Mr. Devine's unsigned termination letter, also dated July 26, 2011, cites additional grounds for his termination. However, the Plaintiff stated in his affidavit that he never received the memoranda and had not seen it until this litigation. In other words, Plaintiff claims that Bristol Metals either misled him into believing that he was being terminated for leaving work unauthorized on July 18, rather than for excess absentee points, or that the Defendant attempted to bolster its reasoning after the fact. However, the Plaintiff stated in his deposition that Mr. DeVine stated that he had acquired excessive absentee points during his suspension meeting on July 21 and that a full tally was being figured. It was known to Mr. Moore that there were four points on his record and that he would be subject to additional points for his absences on July 19-

20. Finally, Bristol Metals continues to maintain that Mr. Moore's leaving without permission on July 18 was a ground for its decision. Therefore, the evidence does not support Mr. Moore's assertions that the Defendant "changed" its reasoning or his implications that he was misled as to the true reasons for his termination until this litigation.

The only remaining evidence proffered to support a claim of discriminatory intent is the temporal proximity between Mr. Moore's FMLA request and his termination. It is true that the Plaintiff was terminated within two months of receiving approval for his FMLA request and within a few days of his last exercising it on July 18, 2011. The Sixth Circuit has determined that temporal proximity can suggest an inference of causal connection for a retaliation claim. *Seeger*, 681 F.3d at 283-284. This case is unique, however, in that the Defendant concedes that it was motivated, at least in part, by Mr. Moore's absences. Rather, the parties disagree on whether the absences giving rise to Mr. Moore's termination were or were not related to his FMLA request and whether Bristol Metals intended to discriminate against him.

Bristol Metals cites case law dealing with the "honest belief" rule. Sixth Circuit precedent prohibits this Court from questioning an employer's decision-making process where an employer honestly believes that it is acting upon legitimate, non-discriminatory grounds, even if those grounds prove to be mistaken. See *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). The *Donald* court articulated the rule's application as follows:

> [I]t is not in the interests of justice for us to wade into an employer's decisionmaking process. It is instead the employer's belief, and whether it is informed and nondiscriminatory, with which we are concerned. We do not require that the employer arrived at its decision in an optimal matter, but that it reasonably relied on the particularized facts that were before it at the time the decision was made.
>
> *Donald, 667 F.3d at 763 (internal citations and quotation marks omitted).* In determining

whether an employer "reasonably relied" on the facts, the court looks to whether the employer

made a "reasonably informed and considered decision before taking an adverse employment action." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (citing *Smith*, 155 F.3d at 807). Applying the honest belief rule to the facts at hand, the question is not whether Mr. Moore was actually entitled to FMLA leave for the subject dates, but whether Bristol Metals believed that he was not. See *Seeger*, 681 F.3d at 286. ("The determinative question is not whether [the plaintiff] actually committed fraud, but whether [the employer] reasonably and honestly believed that he did.").

The Defendant argues that it terminated Mr. Moore for violating company policy, including the Absenteeism Policy. The Plaintiff has not produced any evidence to show that Bristol Metals's beliefs that Mr. Moore accrued excess points under the Absentee Policy or violated other company policies on July 18 were not grounded in facts or were false. Although he claims that a portion of those points were wrongly assessed, Mr. Moore testified that he did not discuss the triggers for her anxiety with the Defendant, but claims only that his superiors were generally aware that she suffered from periodic anxiety attacks. He further concedes that he did not take appropriate action to appeal the points that he now disputes. Mr. Moore's implied consent to the points supports Bristol Metals's belief that they were correct in their assessment that he had exceeded the maximum points under the Policy. There is no dispute that the points assessed for the absences on July 19-20 were not within the employer's discretionary ability. Further, Mr. Moore acknowledged that he violated company policy in leaving work and failing to clock out on July 18.

Bristol Metals was reasonable in relying on the facts before it, including Mr. Moore's past attendance issues and its knowledge of disputes within his family. The facts and circumstances provided reasonable grounds for the decision to terminate Mr. Moore's

employment. The facts also show that the Defendant's decision was adequately considered; Bristol Metals subjected the Plaintiff to ascending discipline, discussed his absentee record in two disciplinary meetings, and gave him opportunities to explain his absences. Even if a jury decides that the Defendant was mistaken in its application of the FMLA and that Mr. Moore truly was entitled to FMLA protection for the subject offenses, there is insufficient evidence to show that Bristol Metals acted with discriminatory intent in taking adverse action against Mr. Moore. The evidence shows that Bristol Metals made a reasonable decision based on the facts before it and Mr. Moore has not shown "that [the Defendant's] decision-making process was 'unworthy of credence.'" *Seeger*, 681 F.3d 274 at 286 (citing *Smith,* 155 F.3d at 808). The record does not show that the Defendant's belief was not based in fact, was not the real motivation for Mr. Moore's termination, or was otherwise insufficient to warrant the action taken. The Plaintiff has therefore failed to establish that the Defendant's non-retaliatory reason was pretextual and the Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's FMLA retaliation claims.

IV.

*Conclusion*

For the reasons discussed above, the Defendant's Motion for Summary Judgment will be DENIED as to the Plaintiff's FMLA interference claims and GRANTED as to the Plaintiff's retaliation claims.


ENTER:


    s/ Leon Jordan
UNITED STATES DISTRICT JUDGE

23